IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COX COMMUNICATIONS INC., et al.,

    Plaintiffs,

    v.

SPRINT COMMUNICATIONS COMPANY L.P., et al.,

    Defendants.

C.A. No. 12-487 SLR

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
CONSTRUCTION OF "PROCESSING SYSTEM" AND MOTION FOR PARTIAL
SUMMARY JUDGMENT**

*Of Counsel*:

WINSTON & STRAWN LLP
Michael L. Brody
James Winn
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

David S. Bloch
101 California Street
San Francisco, California 94111
(415) 591-1452

Pejman F. Sharifi
Krishnan Padmanabhan
200 Park Avenue
New York, New York 10166
(212) 294-6700

Steffen N. Johnson
Eimeric Reig-Plessis
1700 K Street, N.W.
Washington, D.C. 20006
(202) 282-5000

John C. Phillips, Jr. (Bar No. 110)
David A. Bilson (Bar No. 4986)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, Delaware 19806
(302) 655-4200
jcp@pgslaw.com
dab@pgslaw.com

*Attorneys for Plaintiffs*

Dated:  March 27, 2015

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.      Sprint cannot avoid the rule against functional claiming of structural limitations. ........................................................................................................... 2

    II.     Sprint's attempt to describe the "plain meaning" of "processing system" only confirms its indefiniteness. ....................................................................... 5

    III.    "Processing system" remains indefinite even when construed as the CCP/CCM. ........................................................................................................ 8

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aristocrat Techs. Austl. Pty. Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008) ...........................................................................10

*Cochrane v. Deener*,
   94 U.S. 780 (1876) ...........................................................................................2–3

*Fenner Invs., Ltd. v. Cellco P'ship*,
   — F.3d —, 2015 WL 570730 (Fed. Cir. Feb. 12, 2015) .................................8, 10

*Gen. Elec. Co. v. Wabash Appliance Corp.*,
   304 U.S. 364 (1938) ...............................................................................................4

*Holland Furniture Co. v. Perkins Glue Co.*,
   277 U.S. 245 (1928) ...............................................................................................1

*In re Donaldson Co.*,
   16 F.3d 1189 (Fed. Cir. 1994) ................................................................................4

*In re Katz Interactive Call Processing Patent Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011) ................................................................1–2, 5, 8

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014) ............................................................................10

*Mas-Hamilton Grp. v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998) ..............................................................................6

*Medrad, Inc. v. MRI Devices Corp.*,
   401 F.3d 1313 (Fed. Cir. 2005) ..............................................................................7

*Microprocessor Enhancement Corp. v. Texas Instr. Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) ..............................................................................3

*Microsoft Corp. v. Multi-Tech Sys.*,
   357 F.3d 1340 (Fed. Cir. 2004) ..............................................................................9

*Monsanto Co. v. Bayer Bioscience N.V.*,
   363 F.3d 1235 (Fed. Cir. 2004) ..............................................................................7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) ..............................................................................1–3, 5, 8

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ..............................................................................5

*Robert Bosch LLC v. Snap-On Inc.*,
    769 F.3d 1094 (Fed. Cir. 2014)..................................................................................................6

*Southwall Techs. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995)....................................................................................................6

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007)..................................................................................................9

**STATUTES**

35 U.S.C. § 112(b) ...............................................................................................................1, 3–5, 8

35 U.S.C. § 112(f).........................................................................................................................4–5, 7

# INTRODUCTION

Sprint does not even attempt to answer the simple question posed in Cox's opening brief: How can one perform the methods in its patents *without* using a "processing system"? Sprint's inability to meet Cox's challenge is fatal, because the rule enunciated in *Nautilus* is precisely that a claim is not valid if it is not clear enough to apprise the public of "what is still open" for use. 134 S. Ct. at 2129. Sprint's failure in this regard is not surprising. As our opening brief showed, the "processing system" limitation in Sprint's patents has only *functional* content. That is not enough to meet 35 U.S.C. § 112(b)'s requirement that an invention be "particularly point[ed] out and distinctly claim[ed]." Rather, it has long been the law that "attempt[s] to describe a patentable device or machine in terms of its function" are "insufficient, and, if allowed, would extend the [patent] monopoly beyond the invention." *Holland Furniture*, 277 U.S. at 257-58.

Instead of coming to grips with the real issues, Sprint argues that the vacuity of the "processing system" limitation is excusable for three reasons. First, Sprint says method claims cannot be limited by their structural terms. Second, and in any event, Sprint says, the "processing system" of the asserted claims derives meaning from the claims' context. Finally, Sprint says that "processing system" has an ordinary meaning that is well understood by those in the art.

But Sprint's first argument simply misstates the law. All limitations of a claim count, and structural limitations of method claims are no exception. Indeed, where "a method claim" purports to "recite[] structural elements," it is infringed *only* "upon practicing the claimed method in a processor with the required structural limitations." *Katz*, 639 F.3d at 1318. As for Sprint's second argument, since the only "context" provided by Sprint's claims is a catalog of the functions performed by a "processing system," this is tantamount to saying that the "processing system" phrase is functionally, but not structurally, limited. Claims containing such limitations epitomize indefinite claims. *See* Cox's Op. Br., D.I. 208 at 10-13. That leaves Sprint's purport-

ed "plain meaning" for the processing system limitation. As discussed in greater detail below, the "plain meaning" proposed by Sprint is circular, contradicted by the intrinsic evidence, and ultimately pulled out of thin air.

In the end, Sprint's legal theories treat "processing system" as imposing no limitation at all on the scope of its claims, which is exactly what "the rule against purely functional claiming" prohibits. *Katz*, 639 F.3d at 1315-16. Sprint's claims would have exactly the same scope if the word "thing" were substituted for "processing system." And because there is no way to know how to perform the claimed methods without using a "processing system," the patents fail to "appris[e] the public of what is still open to them," leaving instead a "zone of uncertainty" to be "enter[ed] only at the risk of infringement." *Nautilus*, 134 S. Ct. at 2129.

## ARGUMENT

**I.  Sprint cannot avoid the rule against functional claiming of structural limitations.**

A. Facing a century of adverse precedent, Sprint seeks to fabricate an exception to the law's strict ban on functional claiming of structural limitations, arguing that "every patent claim" here "is a method claim," and that it would be "improper[]" "[t]o reduce [Sprint's] method claim term[s] to a representative device." D.I. 215 at 1, 20. Yet *Sprint itself* "reduced" the scope of its method claims by explicitly requiring use of a "processing system" in practicing them. Having written the "processing system" limitation into the claims, Sprint cannot read it out of them. Rather, if "a method claim … recite[s] structural elements," it is infringed *only* "upon practicing the claimed method in a processor with the required structural limitations." *Katz*, 639 F.3d at 1318.

Sprint's contrary version of the law rests entirely on this cropped quote from *Cochrane v. Deener* (D.I. 215 at 1-2, 17):

> That a process may be patentable, ***irrespective of the particular form of the instrumentalities used***, cannot be disputed. . . . The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be alto-

> gether new, and produce an entirely new result. ***The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence***.

94 U.S. 780, 787 (1876) (Sprint's emphasis). But this passage looks dramatically different when one restores the text that Sprint deleted and replaced with ellipsis. The omitted passage explains that, while it is possible that method claims ***may*** not be limited by the device used to practice them, that is so only "***if the patent is not confined to that particular tool or machine***":

> That a process ***may*** be patentable, irrespective of the particular form of the instrumentalities used, cannot be disputed. If one of the steps of a process be that a certain substance is to be reduced to a powder, it ***may*** not be at all material what instrument or machinery is used to effect that object, whether a hammer, a pestle and mortar, or a mill. Either may be pointed out; but ***if the patent is not confined to that particular tool or machine,*** the use of the others would be an infringement, the general process being the same. A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful it is just as patentable as a piece of machinery. In the language of the new patent law, it is an art. The machinery pointed out as suitable to perform the process ***may or may not*** be new or patentable; whilst the process itself ***may*** be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this ***may*** be of secondary consequence.

*Id.* at 787-788 (emphasis added; underlined text omitted from Sprint's quotation).

Consistent with the entirety of *Cochrane*'s teaching, the lower courts have consistently held that where "[m]ethod claim[s] … recite the physical structures of a system in which the claimed method is practiced," "infringement … is clearly limited to practicing the claimed method in a … processor possessing the requisite structure." *Microprocessor Enhancement Corp. v. Texas Instr. Inc.*, 520 F.3d 1367, 1374-75 (Fed. Cir. 2008) (emphasis omitted). And since there is no infringement of ***these*** claims without the use of a "processing system," § 112(b) requires the patents to give "clear notice" of what that processing system ***is***. *Nautilus*, 134 S. Ct. at 2129.

That is why it is irrelevant that, as Sprint points out, we do not dispute the "clarity" of Sprint's "method steps." D.I. 215 at 12. Those "steps" (as Sprint has construed them in related

cases) have been utilized to route calls across a packet network from the dawn of packet switching, close to 50 years ago. The patents' purported improvement over the prior art was not that they disclosed how to route calls across a packet network, but that they "solve[d]" the "impediment" of "reliance on switches" for this purpose, by using a novel "processing system [*i.e.*, the CCP] … that is external to the switches and is operational to receive and transmit signaling." '6,561 Pat. (3:20-56). Sprint's refrain that the precise contours of the "processing system" are unimportant thus gets it backwards. Taking the claimed functions and moving them from the prior art switches to the claimed "processing system" *is* the alleged "invention." D.I. 208 at 15-20. That is why Sprint's patents provide a paradigm example of "the vice of a functional claim," where "the inventor is painstaking when he recites what has already been seen, and then uses conveniently functional language at the exact point of novelty." *Wabash*, 304 U.S. at 371.

    B. Sprint also argues that § 112(f) cases—which often address the rule against functional claiming—are "inapplicable," because Sprint "has only asserted method claims" that do not use "'steps for' or even 'means for' language." D.I. 215 at 16-17. This misses the point. We cited § 112(f) simply as additional authority for the broader proposition that structural limitations cannot be functionally claimed. D.I. 208 at 2-3, 12-13. Section 112(f) is a *savings* clause. It allows otherwise indefinite, functionally claimed structures to turn to the specification to supply the structural content that § 112(b) requires. Yet even under § 112(f), any failure to "set forth in the specification an adequate disclosure showing what is meant" is a "failure to particularly point out and distinctly claim the invention as required by [§ 112(b)]." *Donaldson*, 16 F.3d at 1195. Thus, cases analyzing means-plus or step-plus-function limitations apply the same indefiniteness standard as cases that do not—§ 112(f) merely broadens *where* the structure can be found.

    Here, Sprint's claims do not "particularly point[] out and distinctly claim[] the subject

4

matter" of the claimed inventions because, while "processing system" purports to be structural language limiting the claimed functional elements, it is not really a limitation at all—it has no content beyond the ability of the claimed "system" to perform the claimed ("processing") functions. As Sprint repeatedly emphasizes, it has not invoked § 112(f), even though that would at least permit it to draw from the specification to fill in the missing structure. Sprint's problem is that the structure embodied in the claimed "processing system" is nowhere to be found—in either the claims *or* the specification. D.I. 208 at 15-20. Thus, regardless of whether Sprint's claims are analyzed under § 112(f), they fail to satisfy § 112(b)'s definiteness standard.

C. Sprint nevertheless insists that the extreme "breadth" of "processing system" cannot render it "indefinite[]." D.I. 215 at 12. And to be sure, broad claim terms can be definite—*if* they are "precise enough to afford clear notice of what is claimed." *Nautilus*, 134 S. Ct. at 2129. But it is equally true that claims can be so *overbroad* that their outer bounds are not discernible. In particular, a limitation "broad enough to cover any" system that performs a claimed function "exhibit[s] the overbreadth inherent in open-ended functional claims," and thus "fail[s] to fulfill the public notice function" of § 112(b). *Katz*, 639 F.3d at 1315. That is the problem here.

II. **Sprint's attempt to describe the "plain meaning" of "processing system" only confirms its indefiniteness.**

A. Sprint argues that "the context provided by the claim[] language" dictates that each asserted claim encompasses "processing systems having different features and functionality," thereby saving the limitation. D.I. 215 at 9. But where both claims share a common specification, basic claim construction principles provide that "processing system" cannot, like a chameleon, mean one thing in one claim and something entirely different in another. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[T]he same claim term in the same patent or related patents carries the same construed meaning."). As the Federal Circuit has ex-

5

plained, the same term "cannot be interpreted differently in different claims"; it "must be interpreted consistently." *Southwall Techs. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995).

More fundamentally, however, Sprint is effectively arguing that a "processing system" is anything that will perform the recited functions of each of the particular claims. D.I. 215 at 10. But this means that the limitation has no independent content, such that the claims would have exactly the same scope if the word "thing" were substituted for "processing system." That is the epitome of indefiniteness. A claim limitation "cannot be construed so broadly [as] to cover every conceivable way or means to perform [a] function." *Mas-Hamilton Grp.*, 156 F.3d at 1214.

This is exemplified by Sprint's discussion of claim 1 of the '3,561 patent. Sprint insists that claim 1 is "clear on what the processing system is: it is the system used in the *control* of a packet communication system; it *receives* narrowband signaling for a call; it *processes* signaling to *select* egress routing information; and it *transmits* control information to the packet system." D.I. 215 at 11 (emphasis added). But note the italicized words. All are *functions* that the "processing system" performs. They say nothing about its *structure*. Thus, there is nothing in the context of the claim that delimits the scope of the "processing system" that performs the claimed functions. Rather, since the claim's "other words" "do nothing more than identify ['processing'] functions for the '[system]' to perform," they "provide no structural guidance" and the term remains "indefinite." *Robert Bosch*, 769 F.3d at 1099-1101.

B. As an alternative to its contextual approach, Sprint invokes its expert Dr. Wicker's definition of "processing system" as "a system that processes signaling to assist in call control." D.I. 215 at 12. This amounts to saying a "processing system" is "a system that processes," and adds to that circular definition only the functional limitations that *other* elements of the asserted claims call for—*i.e.*, "process[ing] signaling to assist in call control." *E.g.*, '3,561 Pat. (cl. 1).

6

Not only is Dr. Wicker's "definition" circular, it is summoned out of thin air. At most, he notes that a "processing system" is "discussed" in this passage from the Control Patents: "The CCP is a processing system, and as such, those skilled in the art are aware that such systems can be housed in a single device or distributed among several devices." Wicker Decl., Ex. A to D.I. 216 ¶¶ 30-31, 68-69 (citing '052 Pat. (13:37-42)). This equates "processing system" with a "CCP," which in turn is "housed in" one or more "devices." As "CCP" is undefined (D.I. 208 at 15-20), this tells us at most *where* a processing system might sit, but provides no basis for any construction, let alone Dr. Wicker's, of *what* it is that is "housed in" one or more "devices."

C. Lastly, Sprint cites "additional patents" that use "processing system." D.I. 215 at 12-13. As a matter of law, however, "the same claim term" may have "different meanings in different patents," "depending on the specifics of each." *Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1244 (Fed. Cir. 2004). Thus, "the manner in which [a] term is used" in one patent cannot be used to define "the same term in a different patent with a different specification or prosecution history." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1318 (Fed. Cir. 2005).

Moreover, the fact that "processing system" may have meaning in the context provided by other patents only begs the question whether it has meaning here. Neither patent that Sprint relies on (D.I. 215 at 12-13) provides a definition that Sprint can use here, but both provide substantial "context" beyond the purely functional disclosures in the asserted patents. U.S. Patent 4,720,850 (D.I. 216 at Ex. F) actually does not claim a "processing system." It claims a "call processing arrangement" made up of various "call processing means." Its claims therefore do what Sprint insists its claims do not—invoke § 112(f), limiting "call processing" to the "means" structurally defined by the patent's 30 figures and 74 columns of text.

As for U.S. Patent 6,016,343 (D.I. 216 at Ex. G), its claims refer to a "call-processing

7

system" (again, not "processing system"), and additional language in the claims provides precisely the structural "context" that Sprint's claims do not; they require the "call processing system" to incorporate a "network control processor," defined in the specification as "a unique combination of hardware and software" explicated in 207 figures and 158 columns of text.[1]

"Processing system" is, of course, a coherent English phrase that can be understood in ordinary discourse and may even be suitable for claiming in the right case. But the word "thing" or "means" can likewise be understood. That does not make either term, ***without more***, sufficiently definite to "distinctly claim [an] invention" under § 112(b). "[A patent] monopoly is a property right," and "its boundaries should be clear." *Nautilus*, 134 S. Ct. at 2124. Sprint could have claimed or at least disclosed what a "processing system" is, but chose instead to reveal only what it does. Such "purely functional claiming" of structural limitations "fail[s] to … 'particularly point out and distinctly claim[]' the invention." *Katz*, 639 F.3d at 1315-16.[2]

### III.   "Processing system" remains indefinite even when construed as the CCP/CCM.

In refusing to ascribe any fixed meaning to "processing system," Sprint resists even construing the term consistently with its own specifications, which repeatedly call out the CCP/CCM as the "processing system" that Christie's purported invention.[3] By Sprint's lights, the CCP

---

[1]  As Dr. Leonard Forys showed in the *Comcast* case, Dr. Wicker's other patents use "processing system" in similarly restrictive and divergent ways, and do not support his "definition." *See* Supplemental Declaration of David S. Bloch (filed concurrently) at Ex. I ¶ 3.

[2]  Sprint relies heavily on Judge Lungstrum's refusal to construe the term in *Vonage*, *Big River*, and *Comcast* (two of which pre-date *Nautilus*). The question for the Court, however, is not what Judge Lungstrum ruled, but whether he was right. Judge Lungstrum has a clear predilection for "plain meaning" constructions. D.I. 216 at Ex. E (declining to construe 31 of 51 limitations). The Federal Circuit recently observed that "claims" that "describe technology … often require[] 'construction'" to "establish …. the [patent's] boundaries." *Fenner*, 2015 WL 570730, *3. We respectfully submit that the Federal Circuit's guidance is well taken, and disagree with Judge Lungstrum's disinclination to construe this and many of the other limitations of these patents.

[3]  Sprint opens with an irrelevant, inaccurate, and citationless tribute to its late inventor, Joe

8

and CCM are mere "embodiments" of a "processing system." D.I. 215 at 18. Sprint is mistaken.

It is true that examples in a specification are not always limiting. But where the specification "describes the features of the 'present invention' as a whole, th[e] description limits the scope of the invention." *Verizon*, 503 F.3d at 1308. Here, the Control Patents state that "[t]he *present invention* represents a *fundamental* and powerful departure from previous telecommunications technology" precisely because, "[b]y separating the communications path from communication control, the CCP can utilize different networks and network devices intelligently." '6,561 Pat. (20:39-44) (emphasis added). Likewise, the ATM Interworking Patents call for a "signaling processor"—described only as a "CCM"—that provides "broadband virtual connections … on a call-by-call basis without requiring the call processing and signaling capability of an ATM switch." '429 Pat. (2:64-67, 5:49, 6:50-51). Again, these patents highlight the CCM's separation from the communications path as the singular "[a]dvantage[]" of "the invention" they claim. *Id.* (25:23-24). *See generally* D.I. 208 at 15-20. Because "[t]hose statements … broadly describe the overall invention[]," they "are not limited to describing a preferred embodiment." *Microsoft*, 357 F.3d at 1348. Indeed, as Sprint admits, the claimed "invention extracted the intel-

---

Christie. Contrary to Sprint's assertion, technologies for connecting users of the public phone system with users on a packet-switched phone network were demonstrated during the 1970s as part of the ARPANET (the precursor of the Internet). Indeed, development of this functionality was one of the core reasons why the Government created the Internet. Before Christie had applied for a single patent, companies like Siemens, Packet Technologies, Incite, and COM21 were offering commercial products allowing users to take advantage of this publicly funded technology. And far from copying Christie's inventions, neither Cox nor any other cable company had ever heard of Christie or his patents before they spent hundreds of millions of dollars building out their VoIP telephone systems. The reality is that, in his own contemporaneous descriptions of his invention, Christie characterized his patents as relating to a narrowly conceived implementation of Voice-over-ATM (not Voice-over-IP) telephony—one that relied on a CCP. Sprint spent close to a decade and billions of dollars trying to commercialize Christie's ideas before shutting the effort down without ever deploying it. Having invested heavily in the losing technology, Sprint is now attempting to recoup that massive outlay by seeking to monopolize a technology that taxpayer dollars created as a public good and others successfully commercialized.

ligence of expensive and complicated legacy switches and placed this intelligence on a separate platform"—namely, the CCP. D.I. 215 at 4. Thus, in Sprint's words, the patents' "innovation" was in "extracting call control from the switch." *Id.*[4] True, the specifications at times call the CCP/CCM "embodiments" of a "processing system." Yet the CCP/CCM is the sole embodiment disclosed, the patents repeatedly identify it as "the invention," and the patents never hint at what *else* a processing system might be. With only the "lone example" of the CCP/CCM, "a skilled artisan is still left to wonder what other" devices qualify—an "ambiguity" that leaves him or her in "the innovation-discouraging 'zone of uncertainty.'" *Interval Licensing*, 766 F.3d at 1374.[5]

Even when construed as the CCP/CCM, however, "processing system" remains fatally indefinite. D.I. 208 at 15-20. Notably, Sprint does not seriously attempt to identify any disclosure of the CCP/CCM's structure. The sole exception is a footnote, in which Sprint says that the Control Patents describe the CCP as "a Tandem CLX machine"—*i.e.*, a general purpose computer—"configured in accord with the disclosure of th[e] invention." D.I. 215 at 20 n.87. But absent a "particular algorithm to perform the claimed function," disclosing a general purpose computer as a claimed structure "is contrary to … law." *Aristocrat*, 521 F.3d at 1333.

## CONCLUSION

The Court should hold that the term "processing system" is indefinite, and grant partial summary judgment of invalidity to Cox on the Control Patents and ATM Interworking Patents.

---

[4] Sprint's "claim differentiation" argument (D.I. 215 at 19 n.86) does not help. Claim differentiation "cannot enlarge the meaning of a claim beyond that which is supported," and it "will be overcome by a contrary construction dictated by the written description." *Fenner*, 2015 WL 570730, *6. As these patents confirm, the CCP/CCM is the invention's "fundamental" feature.

[5] The same problem infects Sprint's argument that the ATM Interworking Patents state that "[t]hose skilled in the art are aware of various hardware components which can support the [invention's] requirements." D.I. 215 at 20 n.87. Because there is no disclosure of what "hardware components" meet this need, there is no disclosure of what processing systems might qualify.

| | |
|---|---|
| Dated:  March 27, 2015 | Respectfully submitted, |
| *Of Counsel*: | |
| | */s/ John C. Phillips, Jr.* |
| WINSTON & STRAWN LLP | John C. Phillips, Jr. (Bar No. 110) |
| Michael L. Brody | David A. Bilson (Bar No. 4986) |
| James Winn | PHILLIPS, GOLDMAN & SPENCE, P.A. |
| 35 West Wacker Drive | 1200 North Broom Street |
| Chicago, Illinois 60601 | Wilmington, Delaware 19806 |
| (312) 558-5600 (t) / (312) 558-5700 (f) | (302) 655-4200 |
| mbrody@winston.com | jcp@pgslaw.com |
| jwinn@winston.com | dab@pgslaw.com |
| | |
| David S. Bloch | *Counsel for Plaintiffs* |
| 101 California Street | |
| San Francisco, California 94111 | |
| (415) 591-1452 (t) / (415) 591-1400 (f) | |
| dbloch@winston.com | |
| | |
| Pejman F. Sharifi | |
| Krishnan Padmanabhan | |
| 200 Park Avenue | |
| New York, New York 10166 | |
| (212) 294-6700 (t) / (212) 294-4700 (f) | |
| psharifi@winston.com | |
| kpadmanabhan@winston.com | |
| | |
| Steffen N. Johnson | |
| Eimeric Reig-Plessis | |
| 1700 K Street, N.W. | |
| Washington, D.C. 20006 | |
| (202) 282-5000 (t) / (202) 282-5100 (f) | |
| sjohnson@winston.com | |
| ereigplessis@winston.com | |