IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COX COMMUNICATIONS INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. No. 12-487-SLR |
| ) | |
| SPRINT COMMUNICATIONS ) | |
| COMPANY L.P., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

At Wilmington this 15th day of May, 2015, having reviewed plaintiffs' motion for partial summary judgment and construction of "processing system" (D.I. 207), and the papers filed in connection therewith;

IT IS ORDERED that plaintiffs' motion for partial summary judgment (D.I. 207) is granted, for the reasons that follow:

1. **Background.** On May 16, 2012, plaintiffs[1] (collectively "Cox") filed a

---

[1] Cox Communications, Inc.; CoxCom, LLC; Cox Arkansas Telcom, L.L.C.; Cox Communications Arizona, LLC; Cox Arizona Telcom, L.L.C.; Cox Communications California, LLC; Cox California Telcom, L.L.C.; Cox Colorado Telcom L.L.C.; Cox Connecticut Telcom, L.L.C.; Cox District of Columbia Telcom, L.L.C.; Cox Florida Telcom, L.P.; Cox Communications Georgia, LLC; Cox Georgia Telcom L.L.C.; Cox Iowa Telcom, L.L.C.; Cox Idaho Telcom L.L.C.; Cox Communications Kansas, L.L.C.; Cox Kansas Telcom, L.L.C.; Cox Communications Gulf Coast, L.L.c.; Cox Communications Louisiana, L.L.C.; Cox Louisiana Telcom, L.L.C.; Cox Maryland Telcom L.L.C.; Cox Missouri Telcom, LLC; Cox Nebraska Telcom, L.L.C.; Cox Communications Omaha, L.L.C.; Cox Nevada Telcom, L.L.C.; Cox Communications Las Vegas, Inc.; Cox North Carolina Telcom L.L.C.; Cox Ohio Telcom, L.L.C.; Cox Oklahoma Telcom, L.L.C.; Cox Rhode Island Telcom, L.L.C.; Cox Virginia Telcom, L.L.C.; and Cox Communications Hampton Roads, L.L.C.

declaratory action for invalidity and non-infringement of twelve Sprint patents,[2] and for infringement of two Cox patents[3] by defendants Sprint Communications Company L.P. ("Sprint Communications"), Sprint Spectrum, L.P. (Sprint Spectrum"), Sprint Solutions, Inc. ("Sprint Solutions") (collectively, Sprint). (D.I. 1) On September 17, 2013, Sprint filed, by stipulation, a second amended answer and counterclaims.[4] (D.I. 114; D.I. 115) On October 7, 2013, Cox answered Sprint's second amended counterclaims and asserted counterclaims.[5] (D.I. 119) On October 24, 2013, Sprint answered Cox's counterclaims. (D.I. 123) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. Plaintiff Cox Communications, Inc. (CCI) is a Delaware corporation with its principal place of business in Atlanta, Georgia. CCI provides general corporate, accounting, and management services to the other Cox plaintiffs. CCI is the direct or indirect parent of the other Cox plaintiffs. (D.I. 1 at ¶ 4) CoxCom, LLC ("CoxCom") is a Delaware corporation with its principal place of business in Atlanta, Georgia. CoxCom is a wholly owned subsidiary of CCI and does not directly provide telephony services or

---

[2] U.S. Patent Nos. 6,452,932 ("the '932 patent"); 6,463,052 ("the '052 patent"); 6,633,561 ("the '3,561 patent"); 7,286,561 ("the '6,561 patent"); 6,473,429 ("the '429 patent"); 6,298,064 ("the '064 patent"); 6,343,084; 6,262,992; 6,330,224; 6,563,918; 6,639,912; and 6,697,340.
[3] U.S. Patent Nos. 7,992,172 and 7,836,474.
[4] Having previously filed an answer and counterclaims for infringement of seven other Sprint patents, U.S. Patent Nos. 5,742,605; 6,108,339; 6,452,931; 6,870,832; 8,121,028; 5,793,853; and 7,995,730, on July 9, 2012 (D.I. 41) and, by stipulation, a first amended answer and counterclaims for infringement of each of the nineteen Sprint patents on July 12, 2013 (D.I. 96, 97). Sprint's counterclaims are asserted by Sprint Communications and Sprint Spectrum only.
[5] Having previously filed an answer to Sprint's counterclaims and asserted counterclaims on August 13, 2012 (D.I. 53) and filed an answer to Sprint's first amended counterclaims and asserted counterclaims on August 2, 2013 (D.I. 102).

2

technology to end users. CoxCom is the parent of each of the Cox plaintiffs except for Cox Communications Georgia, LLC, Cox Georgia Telcom, LLC, Cox Communications Las Vegas, Inc., LLC, and Cox Nevada Telcom LLC, all of which are direct or indirect subsidiaries of CCI. CoxCom supplies certain of the Cox plaintiffs with technology used by those entities in providing telephony products and services, including the Cox Digital Telephone and SIP Trunking service and other related telephony services. (D.I. 1 at ¶ 5) Each of the other Cox plaintiffs are Delaware corporations with principal places of business in the corresponding State in which it is located. (D.I. 1 at ¶¶ 6-35) The Cox plaintiffs are leading cable entertainment and broadband services providers, and amongst other things, are well known for pioneering the bundling of television, Internet and telephone services together, offering consumers the ability to consolidate these services with one provider. (D.I. 1 at ¶ 58)

3. Defendants Sprint Communications Company L.P. and Sprint Spectrum L.P. are limited partnerships organized and existing under the laws of the State of Delaware, with principal places of business in Overland Park, Kansas. (D.I. 115 at 23, ¶¶ 1-2) Defendant Sprint Solutions is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Overland Park, Kansas. (D.I. 115 at ¶¶ 40, 56) Sprint is a provider of wireless and wireline communications services. (D.I. 1 at ¶ 59)

4. **Standard.** "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec.*

3

*Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

5. To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely

4

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

6. **Analysis.** The disputed limitation, "processing system," is present in the '932, '052, '3,561, and '6,561 patents (the "Control Patents"), which share a specification, and the '064 and '429 patents (the "ATM Interworking Patents"), which share a specification. Exemplary claim 1 of the '3,561 patent recites:

> A method of operating a **processing system** to control a packet communication system for a user communication, the method comprising:
> receiving a signaling message for the user communication from a narrowband communication system into the **processing system**;
> processing the signaling message to select a network code that identifies a network element to provide egress from the packet communication system for the user communication;
> generating a control message indicating the network code;
> transferring the control message from the **processing system** to the packet communication system
> receiving the user communication in the packet communication system and using the network code to route the user communication through the packet communication system to the network element; and
> transferring the user communication from the network element to provide egress from the packet communication system.

('3,561 patent, 22:12-32) (emphasis added) The parties dispute whether the limitation "processing system" is indefinite.

7. The definiteness requirement is rooted in § 112, ¶ 2, which provides that "the specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's

5

performance of its duty as the construer of patent claims." *Personalized Media Comm., LLC v. Int'l Trade Com'n*, 161 F.3d 696, 705 (Fed. Cir. 1998). Reiterating the public notice function of patents, the Supreme Court recently explained that "a patent must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Nautilus, Inc. v. Biosig Instruments, Inc.*, —— U.S. ——, 134 S.Ct. 2120, 2129 (2014) (citations omitted). In balancing the need for clarity with the inherent limitations of the English language, 35 U.S.C. § 112, ¶ 2 requires "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Id.*

8. Sprint proposes using the "plain and ordinary meaning" of the limitation "processing system" or construing the limitation as "a system that processes signaling to assist in call control." (D.I. 224 at 10-12, 20) Sprint's expert explained:

> 31. The ["communication control processor" ("CCP")] performs call processing functions using, among other things, signaling that reaches the CCP to selects (or participate in the selection of) network characteristics for the call. The CCP may be composed of one or many physical components as is discussed in the specification.
>
> The CCP is a processing system and as such, those skilled in the art are aware that such systems can be housed in a single device or distributed among several devices. Additionally, multiple devices with overlapping capabilities might be desired for purposes of redundancy. The present invention encompasses these variations. ('052 patent, 13:37-42)
>
> . . .
>
> 69. The term "processing system" has an understood meaning in the telecommunications industry by a person of ordinary skill in the art. For example, the '052 Patent specification discusses its meaning. (*See* ¶ 3[1]). Also, the '429 Patent references a patent using the term. (U.S. Patent No. 4,720,850 ["the '850 patent"]) as does the '064 patent (6,016,343 ["the '343 patent"]). As this evidence indicates, the term

6

"processing system" was known in the art at the time of invention and refers to a system that processes signaling to assist in call control.

(D.I. 216, ex. A at ¶¶ 69, 31) Sprint's expert also opined that the Sprint patents reference other patents which use the phrase "processing system," demonstrating that a person of ordinary skill in the art would have known with reasonable certainty what is meant by the limitation. (D.I. 216, ex. B at ¶ 14)

9. Cox, on the other hand, argues that the limitation is indefinite, because the structural limitation, "processing system," is only described functionally. (D.I. 221 at 11-13) Alternatively, Cox asserts that the limitation should be construed as a CCP for the Control patents and a "call connection manager" ("CCM") for the ATM Interworking patents, which construction is still indefinite as the disclosures for each of these devices are purely functional. (*Id.* at 15-21) In support of the same indefiniteness argument, an expert for Comcast[6] disagreed with Sprint's expert and opined that there is no "known, well-understood meaning" of processing system. Instead, Comcast's expert selected five patents (of the twenty five identified by Sprint's expert as using "processing system" in their claims) and explained that "the phrase is used differently in each of the [five] patents [he] sampled, with different structures: at the very least the processors involved have specialized software to perform their widely differing functions." (D.I. 218, ex. I at ¶ 3)

10. At the outset, "[w]hile not an absolute rule, all claim terms are presumed to have meaning in a claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004). "Functional language in claims [today] is not

---

[6] In *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, Civ. No. 11-2684 at D.I. 361 (D. Kan. 2011).

7

objectionable per se so long as it avoids . . . problems of undue breadth and vagueness." 3 Donald S. Chisum, *Chisum on Patents* § 8.04 (2015). The Federal Circuit recently reiterated that "when a claim limitation is defined in 'purely functional terms,' a determination of whether the limitation is sufficiently definite is 'highly dependent on context (e.g., the disclosure in the specification and the knowledge of a person of ordinary skill in the relevant art area).'" *Biosig Instruments, Inc. v. Nautilus, Inc.*, --- F.3d ----, 2015 WL 1883265, *3 (Fed. Cir. 2015) (citing *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008)). However, "in some instances, use of functional language can fail 'to provide a clear-cut indication of the scope of subject matter embraced by the claim' and thus can be indefinite." *Halliburton Energy*, 514 F.3d at 1255 (citing *In re Swinehart*, 439 F.2d 210, 212-13 (C.C.P.A. 1971)).

11. In *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367 (Fed. Cir. 2008), the Federal Circuit analyzed a method claim that recited structural elements: A "method of executing instructions in a pipelined processor comprising: [structural limitations of the pipelined processor]; the method further comprising: [method steps implemented in the pipelined processor]." *Id.* at 1374. The Court explained that "[m]ethod claim preambles often recite the physical structures of a system in which the claimed method is practiced" and "[d]irect infringement of [the] claim . . . is clearly limited to practicing the claimed method in a pipelined processor possessing the requisite structure." *Id.* at 1374-75.

12. As in *Microprocessor Enhancement*, the asserted method claim contains a structural limitation, "processing system." This limitation is found not only in the

8

preamble, but in the body of the claim. The specification of the Control patents

describes each figure as "a block diagram of a version of the invention" ('3,561 patent,

4:42-51), with a CCP depicted in each figure.[7] The specification describes the

processing system as

> a telecommunications processing system which comprises an interface
> that is external to the switches and is operational to receive and transmit
> signaling. The processing system also includes a translator that is
> coupled to the interface and is operational to identify particular information
> in the received signaling and to generate new signaling based on new
> information.

('3,561 patent, 3:53-59) In describing the CCP, the specification explains that it "is a

processing system, and as such, those skilled in the art are aware that such systems

can be housed in a single device or distributed among several devices." (*Id.* at 13:41-

43) For the ATM Interworking patents, the specification explains that:

> Signaling processing system 160 is any processing platform that can
> receive and process signaling to select virtual connections, and then
> generate and transmit signaling to identify the selections. Various forms
> of signaling are contemplated by the invention, including SS7, C7, and
> user to network interface (UNI) signaling. A preferred embodiment of the
> signaling processor is discussed in detail toward the end of the disclosure.

('064 patent, 4:26-33) The specification then identifies the CCM as "a signaling

processor that operates as discussed above." (*Id.* at 6:54-55) These recitations

describe the physical structures identified as the "processing system," in which

the claimed method is practiced. The court concludes that these physical

structures (functionally described by the claims and in the specifications) do not

---

[7] Figure 4 depicts "main capabilities of one version of a CCP" ('3,561 patent, 14:17) and figures 5-8 are flow diagrams of the CCP for certain versions of the present invention (*id.* at 14:59-60, 15:64-65, 18:4-5, 18:52-53).

9

pass muster under *Nautilus* as a person of ordinary skill in the art is not provided with the bounds of the claimed invention.

13. Turning to extrinsic evidence, the '850 patent cited by Sprint's expert contains a singular reference to "processing system," that is "call processing system design." ('850 patent, 3:14-15) The '850 patent describes a "program-controlled call processing arrangement;" one embodiment "comprises (a) a point-to-point call processing arrangement for handling conventional point-to-point calls, and (b) a broadcast service vendor call processing arrangement for handling calls to broadcast program source channels." (*Id.* at abstract; 4:9-14) The '343 patent cited by Sprint's expert is directed to a "call processing system," which is structurally described as "a network control processor for controlling the processing and routing of the calls and for providing enhanced features, and a matrix switch for routing calls from an originating location to a terminating location." ('343 patent, abstract) As explained by Comcast's expert above, the limitation "processing system" is used differently in a sampling of other patents. Moreover, the parties have not provided, nor has the court found, a dictionary definition for the phrase "processing system." *See e.g.*, Dictionary of Computer Science (Valerie Illingworth et al. eds., 4th ed. 2001); Dictionary of Computer and Internet Words [an A to Z Guide to Hardware, Software, and Cyberspace] (2001); Microsoft Computer Dictionary (1999). The court concludes that there is no "established meaning in the art" for the disputed limitation.[8]

---

[8] In contrast the Federal Circuit in *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014) found "that [the limitation] 'look and feel' had an established, sufficiently objective meaning in the art, and that the '399 patent used the term consistent with that meaning," which "viewed in light of the specification and prosecution history, informed

10

14. Sprint's proposed construction of "a system that processes signaling to assist in call control" describes the "processing system" by its function. Likewise, Sprint's argument that any system performing the steps of the method infringes offers no "objective boundaries" for those skilled in the art to determine the scope of the invention. The court concludes that the claim language and the specification do not provide structural limitations for the "processing system" and do not inform those skilled in the art about the scope of the invention with reasonable certainty.[9] The limitation is indefinite.[10]

15. **Conclusion.** For the aforementioned reasons, plaintiffs' motion for partial summary judgment (D.I. 207) is granted.

_____
United States District Judge

---

those skilled in the art about the scope of the '399 patent's claims with reasonable certainty." *Id.* at 1260-61.

[9] The parties agree that the means-plus-function format of 35 U.S.C. § 112(f) and corresponding arguments do not apply to the case at bar. (D.I. 222 at 4)

[10] The court respectfully recognizes that this conclusion is contrary to that of *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns, LLC*, Civ. No. 11-2684 at D.I. 435, 435 (D. Kan. 2011), declining to construe "processing system."