# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COX COMMUNICATIONS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-487 SLR |
| | ) | |
| SPRINT COMMUNICATIONS | ) | **JURY TRIAL DEMANDED** |
| COMPANY L.P., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SPRINT'S BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' FOURTH SUPPLEMENTAL INVALIDITY CONTENTIONS

Of Counsel:

B. Trent Webb (*pro hac vice*)
Aaron Hankel (*pro hac vice*)
Ryan Dykal (*pro hac vice*)
Ryan Schletzbaum (*pro hac vice*)
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
T: 816.474.6550

Robert Reckers (*pro hac vice*)
David Morehan (*pro hac vice*)
SHOOK, HARDY & BACON LLP
JPMorgan Chase Tower
600 Travis Street, Suite 3400
Houston, Texas 77002-2992
T: 713.227.8008


Dated: April 13, 2017

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Ave., Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

ATTORNEYS FOR SPRINT

**TABLE OF CONTENTS**

I.    Cox Has Refused to Uphold its End of the "Contention Reduction" Bargain .................... 3

II.    Cox's New Contentions Do Not Provide Notice of the Theories It Intends To Assert and Unduly Prejudice Sprint ................................................................................................... 6

      A.    Invalidity Theories for Call Control Patents ............................................................ 6

      B.    Invalidity Theories for Broadband Patents .............................................................. 9

      C.    Discovery on All of These Theories is Impossible, Especially In Light of Cox's Recent Rule 26(a) Disclosures ............................................................................... 11

III.    Courts Routinely Strike Invalidity Contentions that Fail to Provide Reasonable Notice and Require Reasonable Limits on the Amount of Asserted Prior Art ........................... 13

IV.    Trial by Ambush is Likely in this Case, if Cox is Not Required to Reduce its Prior Art Theories and References ............................................................................................... 15

V.    Conclusion .................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*GreatBatch Ltd., v AVX Corp.*,
  No. 13-723-LPS, Dkt. 368, at 2 (D. Del. July 28, 2015) (attached as Exh. K)........................14

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
  Case No. 2:13-cv-17, 2013 U.S. Dist. LEXIS 145194 ...........................................................14

*O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006).................................................................................................3

*Personal Audio, LLC v. Togi Entm't, Inc.*,
  No. 2:13-cv-13-JRG-RSP, Dkt. 251, at 2 (E.D. Tex. Aug. 5, 2014) (attached as Exh.
  J)..............................................................................................................................................13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  C.A. No. 04-1371-JJF, 2006 U.S. Dist. LEXIS 67562 (D. Del. Sept. 20, 2006).....................14

*Rambus Inc. v. Hynix Semiconductor Inc.*,
  Nos. C-05-00334 RMW ...........................................................................................................14

*Realtime Data, LLC v. Packeteer, Inc.*,
  Civil No. 6:08-cv-144-LED-JDL, 2009 U.S. Dist. LEXIS 114207...............................3, 13, 14

*Saffran v. Johnson & Johnson*,
  2:07 CV 0451 (TJW), 2009 U.S. Dist. LEXIS 19615 (E.D. Tex. Feb. 24, 2009). ..................13

Throughout this litigation, this Court has stressed the need to streamline the amount of asserted claims and prior art as trial approaches.  To this end, Sprint has reduced its infringement case from 208 claims across 19 patents down to 40 claims across 10 patents—an 80% reduction in asserted claims.  Further, over half of these claims are from just two patent families.  These families have substantially overlapping *subject* matter, and—combined—rely on a total of two specifications.

In contrast, Cox has made no attempt to reduce the size and scope of its invalidity case—instead, it has repeatedly expanded its invalidity theories.  Now, in its Fourth Supplemental Invalidity Contentions, Cox massively increases the amount of prior art and invalidity theories it is asserting against the four Call Control Patents (U.S. Patent Nos. 6,463,052, 6,452,932, 6,633,561, and 7,286,561), and two of the three Broadband Patents (U.S. Patent Nos. 6,298,064 and 6,473,429), despite the fact that Sprint has decreased the number of asserted claims from these patents by nearly 60% (from 70 down to 29) since the inception of this case.

Cox's contentions for claim 1 of the '932 Call Control Patent are exemplary.  Cox asserts at least 29 different anticipation references against this one claim, in 29 separate charts, based on 85 different documents.  Cox also asserts innumerable obviousness combinations against this single claim, based on undisclosed combinations of these references with one another and with 16 other secondary references.  Cox asserts a similarly large amount of invalidity theories for almost every asserted claim, as illustrated by the 147 "anticipation" charts included in Cox's recent contentions, summarized below:

| Patent | Number of Unique "Anticipation" Charts |
|:---:|:---:|
| '052 | 29 |
| '932 | 29 |
| '3,561 | 30 |

1

| '6,561 | 27 |
|---|---|
| '064 | 16 |
| '429 | 16 |
| **TOTAL** | **147** |

Back in April 2016, when Sprint raised its concerns with Cox's already sprawling contentions, the Court stated that the "problem" with Cox's tactics is that "you go to expert discovery with this kind of complicated regime, the expert reports are worthless, because there's no way that any one expert can keep track of all of that." Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 8:13-16. The Court particularly noted its concern with Cox's "system" theories, stating that Cox should put Sprint on notice of what its expert truly intended to focus on for these systems, so that "the focus of the argument [is] on whether System A really serves to make obvious the patent as opposed to what is System A." *Id.* at 14:21–24. Those same system theories—plus many more—are asserted in Cox's Fourth Supplemental Invalidity Contentions.

These voluminous new contentions, produced in the late stages of this litigation, serve only to obfuscate the "real" invalidity theories Cox intends to rely upon at trial. This problem is compounded by Cox's lengthy Rule 26(a) disclosures, which were expanded (again) just this week. Cox has listed almost 40 people who "may have knowledge" of the prior art references—three of whom were disclosed for the first time this week. These last minute disclosures are unduly prejudicial to Sprint, as it will be impossible to conduct an adequate investigation of all of these theories prior to the close of discovery and—as the Court itself noted in April 2016—this morass of contentions will merely result in "worthless" expert reports. Further, it will be inordinately burdensome to prepare defenses for each and every one of these potential theories—especially given that only a tiny percentage of them will actually be relied upon at trial.

Sprint should not be forced to attempt to unearth a "needle" from this "haystack" of arguments at this point in the case.  Accordingly, Sprint respectfully moves the Court to strike Cox's Fourth Supplemental Invalidity Contentions in their entirety because they fail to provide Sprint with actual notice of Cox's invalidity positions and unduly prejudice Sprint.  In addition, given that Cox's existing set of prior art contentions were already well in excess of what could reasonably be tried to a jury, Sprint requests that the Court require Cox to reduce the number of anticipatory prior art references and supporting documents it is asserting, clearly identify not more than five anticipatory references for each asserted claim, and reduce and clearly articulate a reasonable number of specific obviousness theories that it may assert at trial.

## I.    Cox Has Refused to Uphold its End of the "Contention Reduction" Bargain

Invalidity contentions are intended to force parties to "crystallize their theories of the case early in litigation" in order to avoid the "shifting sands approach" to patent litigation, whereby a party changes its invalidity or claim construction position during the course of litigation. *O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.,* 467 F.3d 1355, 1364 (Fed. Cir. 2006) (internal quotations and citation omitted).  They are also intended to "further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush."  *Realtime Data, LLC v. Packeteer, Inc.,* Civil No. 6:08-cv-144-LED-JDL, 2009 U.S. Dist. LEXIS 114207, at **13-14 (E.D. Tex. Dec. 8, 2009) (internal quotations and citation omitted).

Throughout this litigation, this Court has—in light of these policies and goals—stressed the need to reduce the amount of asserted claims and prior art as trial approaches.  *See, e.g.,* D.I. 133, Jan. 4, 2014 Joint Case Mgmt. Report, at 1 (noting discussion of reduction of claims and prior art); Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 8:19-21 (noting the need for Cox to

3

reduce its prior art references and theories).  While both parties expressed their commitment to reduce the volume of asserted claims and prior art, only Sprint has upheld its end of the bargain. Sprint initially asserted 208 claims across 19 patents.  On January 13, 2014, Sprint reduced the number of claims at issue to 60, and pledged to further reduce its claims as litigation continued. *See, e.g.,* D.I. 133 at 4.  At this juncture, Sprint has further reduced its case to 40 claims across 10 patents—an over 80% reduction in the number of asserted claims.  Further, over half of these claims are from two patent families which contain overlapping subject matter and rely on just two specifications.

In contrast, Cox has not only failed to reduce its asserted art, but has repeatedly added prior art references and theories to its contentions.  *See, e.g.,* D.I. 401, Joint Status Report, at 2. The Court noted that Cox's failure to narrow its case was problematic back in April 2016, stating "…we've got to work on a way to get this simplified and to make Cox prioritize what is really their best shot at invalidating the asserted patents."  Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 8:19-21.  Over the course of the past year, Sprint repeatedly requested that Cox reduce the scope of its prior art theories, commensurate with its representations to Sprint and this Court, and also requested the Court's assistance in this matter.  *See, e.g.,* D.I. 405, Joint Status Report, at 1-2; Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 13:6-12.  And yet, despite numerous statements indicating that it would reduce the amount of prior art references being asserted in this case, Cox has made no effort to narrow its invalidity case in any meaningful way.  *See, e.g.,* D.I. 133 at 4; Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 6:10-12 ("My expectation is that … the references will get narrowed."), 11:2-4 ("[W]hat we were proposing was to cut that [number of prior art references] roughly in half, because we think we can do that, and it would be appropriate.").

To the contrary, on December 9, 2016, Cox served Sprint with its Fourth Supplemental Contentions, massively increasing the prior art and invalidity theories asserted against Sprint's Call Control Patents and two of its three Broadband Patents.  These new contentions <u>increase</u> the number of anticipatory references for the Call Control Patents, all of which share the same specification, <u>by about 60%</u> (from 19 to 30 references).  This is despite the fact that Sprint has <u>decreased</u> the number of asserted claims from these patents <u>by over 32%</u> (from 29 to 20 claims). Further, almost a quarter—25%—of these anticipatory references are being identified and charted for the <u>first time</u> in this case, and have <u>never</u> been identified or charted in <u>any</u> other litigation involving these patents.[1]

After these contentions were served, the parties exchanged correspondence regarding the volume and scope of Cox's prior art theories.  *See, e.g.,* Mar. 31, 2017 E-mail from A. Hankel to K. Padmanabhan, Exh. B; Apr. 3, 2017 E-mail from K. Padmanabhan to A. Hankel, Exh. C. However, these exchanges failed to yield any agreement.  Cox refuses to narrow its invalidity case unless Sprint further reduces its asserted claims first—despite the fact that Sprint has been steadily narrowing its contentions throughout the pendency of this case, while Cox has made no such reductions in its own contentions.  Accordingly, the parties are at an impasse regarding what Sprint sees as a clear and immediate need—the reduction and clear specification of Cox's invalidity theories.  Simply put, Cox is refusing to uphold its end of the "bargain" *and* its promises to the Court.  Accordingly, Sprint respectfully submits that this Court should strike Cox's Fourth Supplemental Invalidity Contentions in their entirety and require Cox to further reduce the prior art references and theories contained in its preliminary contentions.

---

[1] This is despite the fact that Cox has known about these references since at least July 2013, when it produced them to Sprint in this case.

**II.    Cox's New Contentions Do Not Provide Notice of the Theories It Intends To Assert and Unduly Prejudice Sprint**

Cox's new contentions effectively "hide the ball" with respect to Cox's "real" invalidity case. Their immense size and scope create a "needle in a haystack" scenario, wherein Sprint is force to dig and sift and sort through a mountain of material to uncover the tiny number of references and theories that Cox is likely to rely upon in its invalidity case. It is impossible for Sprint to adequately conduct discovery regarding these multitudinous theories at this late stage of the litigation, especially given the large—and still growing—list of people that Cox claims "may have knowledge" of the asserted prior art. These contentions manifestly fail to provide Sprint with adequate notice of the theories Cox intends to use at trial, and unduly prejudice Sprint in its own preparations for trial. This is exactly the sort of "litigation by ambush" these contentions are intended to avoid.

**A.  Invalidity Theories for Call Control Patents**

With respect to the four Call Control Patents, all of which share the same specification, the number of anticipatory references has changed from 19 to 30—<u>an increase of almost 60%,</u> despite the fact that Sprint has <u>reduced</u> its asserted claims for these patents <u>by over 32%</u>. *Compare* Cover Pleading of Cox's Fourth Supplemental Invalidity Contentions, Exh. D, at 10-17 *with* Cover Pleading of Cox's Preliminary Invalidity Contentions, Exh. E, at 2-5. Further, Cox charts almost all of these anticipatory references against each patent, almost <u>doubling</u> the number of anticipatory charts for these patents (from 77 to 147), and adding over 900 additional pages of anticipatory charting.

In these contentions, Cox doubled the number of allegedly anticipatory patents, from 7 to 14, and identified 6 of these patents as invalidating prior art <u>for the first time ever,</u> despite the

fact that Cox has been aware of these patents since at least July 2013.[2]  *Compare* Exh. D at 10-11 *with* Exh. E at 2-3.  Cox also added a printed publication, which is also being identified as invalidating prior art <u>for the first time ever</u>, despite knowing of this publication since at least July 2013.[3]  *Compare* Exh. D at 11 *with* Exh. E at 3-4.

Most troubling is Cox's addition of 2-3 new system references[4] to its contentions, and the massive number of documents describing each asserted system.  In its Preliminary Invalidity Contentions, Cox identified 3 anticipatory systems for the Call Control Patents, each described by 4-6 documents.  Now, those same systems are being described by up to <u>six times</u> the number of documents.  For example, for the "ARPA Network Secure Communications Project," the list of identified documents is <u>over six times larger</u> than the original list of documents, ballooning from 4 to <u>24 documents</u>, one of which totals over 700 pages.  *Compare* Exh. D at 12-14 *with* Exh. E at 4.  Further, these documents span over 30 years, from the early 1970s until the 2000s, and involve a variety of authors and research groups spread across the nation.[5]

---

[2]  *See* Cox's Fourth Supplemental Invalidity Contentions, Exh. D at 10-11 (adding the previously unidentified Obara, Felix, Israel, Martin, Breeden, and Reynold patents).

[3]  *See* Cox's Fourth Supplemental Invalidity Contentions, Exh. D at 11 (adding the previously unidentified Stallings publication).

[4] Cox lists the "ARPA Network Secure Communications Project"—previously referred to as the "Network Speech Systems Technology"—as an anticipatory system in its cover pleading, but then appears to provide two separate "ARPA" charts for at least the '932 Patent—B-12 and B-14.  *See* Charts for the '932 Patent from Cox's Fourth Supplemental Invalidity Contentions, Exh. F.  Accordingly, it is unclear whether this is being charted as one or two separate systems.

[5] Cox's supplemental charting of the "ARPA Network Secure Communications Project" system is massive, in both size and scope.  For example, for the '932 Patent, from which only three claims are asserted, its preliminary invalidity chart was only 33 pages.  Now, Cox provides two separate charts for the ARPA system—B-12 and B-14—which are 48 and 64 pages, respectively.  *See* Charts for the '932 Patent from Cox's Fourth Supplemental Invalidity Contentions, Exh. F Further, instead of relying on one or two primary documents, Cox lists up to 24 documents *for each claim element.*  Cox's charting of the preamble of claim 1 of the '932 patent in just one of its ARPA-related charts is exemplary.  *See* Chart B-12 of Cox's Fourth Supplemental Invalidity Contentions, Exh. F.

Instead of putting Sprint on notice of its theories, this "kitchen sink" type of charting effectively hides the documents Cox intends to rely upon at trial to describe this system, should it choose to assert the system at all.  Given the size and scope of some of the documents, and the numerous persons and groups involved in their authorship, it would be impossible for Sprint to complete adequate discovery on this system, especially given the limited time period for supplemental discovery.  Further, the addition of these materials this late in the case clearly prejudices Sprint's ability to prepare for trial.

The situation regarding the other two previously alleged systems is similar in nature, if slightly smaller in scope.  The number of descriptive documents for the "Incite" system has at least <u>tripled</u>—from 4 to 13, while the number of documents for the  "Vision O.N.E." system  has <u>doubled</u>—from 6 to 12.  Further, some of the newly added documents are over 300 pages in length.  This is a clear about-face from Cox's previous representations to the Court regarding the Vision O.N.E. system, indicating it could be described by a small number of documents.  *See* Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 12:1-7 ("… there's a lengthy document … a handful of articles … and there are … two, or maybe three … patents which cover various aspects of the system.").

The newly alleged systems are no better.  One of the newly identified systems—Com21—is described by at least 13 documents.  *See* Cover Pleading of Fourth Supplemental Invalidity Contentions, Exh. D, at 4-6.  Again, this flies in the face of Cox's previous assertions regarding the documents allegedly needed to describe this system.  *See* Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 5:18-22 (stating that the Com21 system "is primarily memorialized in a patent and a publication."), 11:15-21 ("The documentation that is prior to the relevant priority

dates is relatively modest. There's a PowerPoint, an article and a patent … which overlap with one another.").

What is especially problematic with regards to all of these systems—<u>some of which Sprint disputes are single unity systems</u>—is that Cox appears to allege that it may rely on any one of these underlying "descriptive" documents as anticipatory references. *See, e.g.,* Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 4:22-5:2. This <u>triples</u> the number of anticipatory references (from 30 to almost 90) Sprint is forced to investigate and prepare for with respect to the Call Control Patents.

Further, Cox asserts that any of these references may be combined with one another in any fashion to render each and every asserted claim of the Call Control Patents obvious. In addition, these references may be further combined with any of 16 newly alleged secondary references—none of which have been charted—in order to achieve this end. *See* Cover Pleading of Cox's Fourth Supplemental Invalidity Contentions, Exh. D, at 16-17. This results in an impossibly high list of obviousness combinations for each and every asserted claim. Cox itself even admits that "it is not possible to chart all invalidating combinations at this time." *See id.* at 17. And yet Sprint is expected to conduct discovery on all of these combinations within the next month, and then issue comprehensive expert reports regarding the same. This is simply not possible.

### B. Invalidity Theories for Broadband Patents

Sprint has <u>cut the number of asserted claims</u> from the two Broadband Patents—both of which have the same specification—<u>almost in half</u> (from 14 to 8 claims). Despite this substantial reduction on Sprint's part, Cox has made <u>no reduction</u> to the amount of anticipatory art it is asserting against these patents—17 references in total—and has substantially increased its

obviousness references and theories. *Compare* Cover Pleading of Cox's Preliminary Invalidity Contentions, Exh. E, at 6-9 *with* Cover Pleading of Cox's Fourth Supplemental Invalidity Contentions, Exh. D, at 3-7. Further, in its Fourth Supplemental Invalidity Contentions, Cox <u>changed</u> the anticipatory art is its relying upon—adding two new patents, two new publications, and one new system, described by at least 16 separate documents. *Compare* Cover Pleading of Preliminary Contentions, Exh. E, at 7-9 *with* Cover Pleading of Fourth Supplemental Invalidity Contentions, Exh. D, at 3-6. This exemplifies the "shifting sands" approach to litigation that such contentions are intended to prevent.

Similar to the Call Control Patent allegations, Cox has at least <u>tripled</u> the number of number of documents it is relying on to describe one previously alleged system ("Incite"), and <u>doubled</u> the number of documents for the other one ("Vision O.N.E"). Again, it is unclear whether or not Cox will eventually attempt to rely on any of these underlying documents as anticipatory references, thus almost <u>tripling</u> the number of potential anticipatory references for use at trial (from 17 to 54).

As with the Call Control Patents, Cox asserts almost every one of its 17 anticipation theories against each Broadband Patent and its asserted claims—resulting in 32 anticipation charts. Cox has also alleged that any permutation of the anticipatory references it cites may be combined to render any of the claims obvious and—further—that these references may be combined in any fashion with 14 previously undisclosed secondary references to render the asserted claims obvious. This again results in an unreasonably high number of potential obviousness theories for each individual asserted claim, which Cox itself admits cannot be charted at this time. *See* Cover Pleading of Cox's Fourth Supplemental Invalidity Contentions, Exh. D, at 8.

Further complicating matters are Cox's repeated assertions that all of its charts merely "include *representative examples* of where each element may be found in a given prior art reference and are not intended to be an exhaustive description." *See*, *e.g.*, *id.* at 8.  Accordingly, it is impossible to tell from Cox's contentions: (1) the prior art references Cox intends to rely upon at trial for its anticipation theories, (2) the arguments Cox intends to make at trial with regards to its system references, given the volume and breadth of the cited documents, and (3) the specific prior art references or underlying documents that Cox intends to combine at trial for its obviousness theories, and the manner in which they are being combined.

**C. Discovery on All of These Theories is Impossible, Especially In Light of Cox's Recent Rule 26(a) Disclosures**

This Court recognized the difficulties that such complex and voluminous contentions create back in April of 2016, noting that "the problem is, when you go to expert discovery with this kind of complicated regime, the expert reports are worthless, because there's no way that any one expert can keep track of all of that."  Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 8:13-18.  This is the exact problem Sprint now faces.  Fact discovery in this case is set to close in a few weeks, and expert discovery is just months away.  Cox's massive increase in the number of invalidity theories it is asserting against each claim at this late stage of the case severely prejudices Sprint, as it amounts to purposeful obfuscation of the "real" invalidity theories Cox intends to rely upon at trial.  This forces Sprint to spend an inordinate amount of time and money developing defenses to invalidity positions that have little to no chance of being used at trial.  Further, it is impossible for Sprint to conduct the necessary discovery on all of these new theories in this short period of time, especially in light of Cox's lengthy Rule 26(a) disclosures.

Making matters worse, Cox is still adding to those disclosures.  This week, Cox increased its disclosure of people and entities with knowledge of its prior art references.  In its Fifth

11

Supplemental Rule 26(a) Disclosures, served in April 2016, Cox disclosed <u>19 people</u> who potentially had knowledge of the allegedly anticipatory "system" art (disclosing 5 people for Vision O.N.E., 7 people for Com21, 5 people for Incite, and 2 people for ARPA), the majority of which are represented by counsel for Cox. *See* Cox's Fifth Supplemental Rule 26 Disclosures, Exh. G, at 26, 32-37. In its Sixth Supplemental Rule 26a Disclosures—served *just this week*— Cox <u>added 3 more people</u> to this list, two of whom are represented by counsel for Cox, bringing the total to <u>22 people</u>. *See* Cox's Sixth Supplemental Rule 26 Disclosures, Exh. H, at 39 (adding Rathgeb, O'Leary, and Brueckheimer[6]). And this is just for the "system" art—Cox discloses almost <u>40</u> separate people or entities who potentially may have knowledge of a portion of its vast array of anticipatory prior art.

Along with its new disclosures, Cox served Sprint with notice that it intends to take the deposition of one of these newly disclosed persons—Mr. Bruekheimer, who is being represented by counsel for Cox. *See* Cox's Notice of Deposition for Simon Bruekheimer, Exh. I. For this potential witness, whose deposition Cox has noticed for London, England, Cox has made the vague and unlimited disclosure that he "may have information relating to prior art." *See* Cox's Sixth Supplemental Rule 26 Disclosures, Exh. H, at 39. This demonstrates the type of gamesmanship Cox is engaging in, purposefully "hiding the ball" until the last minute, and even then, making broad and obfuscatory disclosures designed to force Sprint to exert a disproportionate amount of time, effort, and money on discovery. Sprint implores the Court to put an end to these tactics. Sprint simply should not be forced to attempt to unearth a "needle"

---

[6] Cox makes the broad and unlimited statement that Mr. Brueckheimer "may have discoverable information relating to prior art" – accordingly, Sprint must assume that this could cover any of the alleged systems. *See* Cox's Sixth Supplemental Rule 26 Disclosures, Exh. H, at 39.

from this haystack of arguments and disclosures at this point of the case, nor should it have to traipse across the globe to do so.

**III.    Courts Routinely Strike Invalidity Contentions that Fail to Provide Reasonable Notice and Require Reasonable Limits on the Amount of Asserted Prior Art**

There is ample legal authority for striking Cox's voluminous new invalidity contentions. For example, in *Saffran v. Johnson & Johnson* the court granted a motion to strike invalidity contentions, explaining that "defendants' almost 800 pages of 'Invalidity Contentions' do not put the plaintiffs on real or useful notice … They do not specifically identify combinations of references that the defendants anticipate using at trial, and they include language purporting to make the contentions merely illustrative," thus constituting "an attempt to end run the rules." 2:07 CV 0451 (TJW), 2009 U.S. Dist. LEXIS 19615, at **3-4 (E.D. Tex. Feb. 24, 2009); *see also Personal Audio, LLC v. Togi Entm't, Inc.,* No. 2:13-cv-13-JRG-RSP, Dkt. 251, at 2 (E.D. Tex. Aug. 5, 2014) (attached as Exh. J) (striking contentions based on a finding that "Defendants have failed to put Plaintiff on notice for the bulk of the thousands of possible combinations that result from the broad language in Defendants' invalidity contentions.").[7]

In this case, Cox provides more than 2,600 pages of "exemplary" invalidity claim charts for its anticipatory references, fails to clearly identify and enumerate what its anticipatory references are, and merely provides vague sweeping statements regarding its potential obviousness theories.   This results in an impossibly high number of potential obviousness

---

[7] As another example, in *Realtime Data*, the court did "not find that reserving the right to combine any charted prior art references offers a plaintiff sufficient notice to adequately rebut a defendant's largely undisclosed invalidity theories."  2009 U.S. Dist. LEXIS 114207, at *22. According to the Court, the proposed combinations based on 500 listed references "cannot serve as sufficient notice" because it would result "in an impossibly high number of combinations." *Id*. at **18-19.

combinations.   Accordingly, this Court would be well within its rights to strike Cox's Fourth Supplemental Invalidity Contentions.

This Court and others also recognize that invalidity contentions must be reasonably limited in number, and that asserting more than a handful of anticipatory references or obviousness combinations per patent claim is unreasonable and impractical.  *See, e.g., Keranos, LLC v. Silicon Storage Tech., Inc.*, Case No. 2:13-cv-17, 2013 U.S. Dist. LEXIS 145194, at **16-17 (E.D. Tex. Aug. 2, 2013) (limiting defendants to 2-3 references per claim, with an obviousness combination counting as a single prior art reference); *Rambus Inc. v. Hynix Semiconductor Inc.*, Nos. C-05-00334 RMW *et al.*, 2008 U.S. Dist. LEXIS 76217, at *28 (N.D. Cal. Aug. 27, 2008) (noting "the parties must focus the issues both in fairness to each other and to the jury," and that "[i]t is hard for the court to imagine a legitimate basis for asserting more than two allegedly anticipating references and two or three obviousness combinations per claim"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 04-1371-JJF, 2006 U.S. Dist. LEXIS 67562, at *18 (D. Del. Sept. 20, 2006) ("[T]he Court will limit Defendants to 7 prior art references (a number equaling the number of claims asserted in this litigation)")[8]; *GreatBatch Ltd., v AVX Corp.*, No. 13-723-LPS, Dkt. 368, at 2 (D. Del. July 28, 2015) (attached as Exh. K) (limiting Defendant to 20 total prior art references for 15 asserted claims, and 60 prior art combinations for arguing obviousness, where "'a prior art combination' shall be understood to be a combination of two or more prior art references *per claim*") (emphasis in original); *Realtime Data*, 2009 U.S. Dist. LEXIS 114207 at **22-23 (limiting

---

[8] Subsequently, in *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, the court modified its order to allow defendants to present evidence of a total of eleven prior art references.  C.A. No. 04-1371-JJF, 2006 U.S. Dist. LEXIS 87259, at **3-4 (D. Del. Nov. 30, 2006).

defendant to no more than 5 obviousness combinations and requiring defendant to identify those combinations specifically).

In this case, Cox has made no effort to reasonably limit its invalidity contentions despite the Court's admonitions, Sprint's requests, and Cox's repeated reassurances that it would do so. Accordingly, Sprint respectfully requests that Cox's Fourth Supplemental Contentions be stricken, and that Cox be required to uphold its end of the bargain by making a substantial reduction in the amount of prior art references and invalidity theories it is asserting, limiting itself to not more than five anticipatory references per claim, and clearly identifying the specific obviousness combinations that it is most likely to pursue at trial.

**IV.    Trial by Ambush is Likely in this Case, if Cox is Not Required to Reduce its Prior Art Theories and References**

Given Cox's purposeful obfuscation of its "real" invalidity theories, Sprint is justifiably concerned that it will face "trial by ambush," especially with respect to the system art and the documents related thereto.

First, it isn't clear exactly how many systems Cox is asserting. For example, it lists the "ARPA Network Secure Communications Project" as a single anticipatory system in its cover pleading, but then provides multiple charts for this reference for at least some individual patents. *See, e.g.,* Charts B-12 and B-14 for the '932 Patent from Cox's Fourth Supplemental Invalidity Contentions, Exh. F.  It also lists the "Baran Rand Project" as an anticipatory system in its cover pleadings, but has not provided a chart with the same name for at least some of the asserted patents—instead, it appears to chart a single underlying document or group of documents, none of which have been asserted as invalidating "printed publications." *See, e.g.,* Chart  B-15 for the '932 Patent from Cox's Fourth Supplemental Invalidity Contentions, Exh. F (entitled "Baran's 1964 Packet Switching Papers," which appears to refer to a group of 11 documents allegedly

15

describing the "Baran Rand Project," referred to as "On Distributed Communications (I-XI), Paul Baran (1964)" in the cover pleading). Accordingly, it is not clear whether Cox is asserting either a system theory or printed publication theory, or both.

Second, Cox's contentions fail to make it clear whether the underlying documents are being asserted as anticipatory references in and of themselves, or whether they will merely be used as descriptors of an anticipatory system. Based on Cox's previous comments, it appears it may assert either the system itself or some permutation of the underlying documents' anticipatory references—despite not disclosing the vast majority of these documents as prior art patents or publications. *See, e.g.,* Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 4:22-5:2 ("So how exactly we would end up proving up the systems, whether we would rely on their status as systems or some permutation of the patents and publications that would independently qualify as references, I'm not sure[.]") (emphasis added).

Third, as raised by Sprint previously in this case, it appears that several of Cox's system-based theories are, in reality, combinations of documents—some of which are not even prior art—in a 103-type fashion. Apr. 5, 2016 Tr. of Status Conference, Exh. A, at 8:3-12, 13:13-19. In fact, Cox itself has stated that, to the extent the documents listed for each system "do not each describe a common invention, it would have been obvious … to combine the disclosures made in the listed materials." *See* Cover Pleading of Cox's Fourth Supplemental Invalidity Contentions, Exh. D, at 4, 12. Here again, Sprint is concerned that it will be forced to prepare for an impossibly high number of prior art combinations, based on various permutations of "supportive" documents cited as descriptive of a "system."

Unless Cox's theories are limited and Cox is required to clearly identify the anticipation and obviousness theories that are mostly likely to be used at trial, Sprint will—at minimum—be

16

forced to attempt to prepare for a huge number of potential prior art theories, and is likely to suffer "trial by ambush."

## V.       Conclusion

Sprint respectfully requests that this Court strike Cox's Fourth Supplemental Invalidity Contentions and, in addition, require Cox to make a substantial reduction in the amount of prior art references and invalidity theories it is asserting in this case (*i.e.*, not more than five anticipatory references per claim), and clearly identify the specific obviousness combinations that it is most likely to pursue at trial.

Dated: April 13, 2017

|  |  |
|---|---|
|  | */s/ Richard K. Herrmann* |
|  | Richard K. Herrmann (#405) |
|  | Mary B. Matterer (#2696) |
| Of Counsel: | MORRIS JAMES LLP |
|  | 500 Delaware Ave., Suite 1500 |
| B. Trent Webb (*pro hac vice*) | Wilmington, DE 19801-1494 |
| Aaron Hankel (*pro hac vice*) | (302) 888-6800 |
| Ryan Dykal (*pro hac vice*) | rherrmann@morrisjames.com |
| Ryan Schletzbaum (*pro hac vice*) | mmatterer@morrisjames.com |
| SHOOK, HARDY & BACON LLP |  |
| 2555 Grand Boulevard | ATTORNEYS FOR SPRINT |
| Kansas City, Missouri 64108-2613 |  |
| T: 816.474.6550 |  |

Robert Reckers (*pro hac vice*)
David Morehan (*pro hac vice*)
SHOOK, HARDY & BACON LLP
JPMorgan Chase Tower
600 Travis Street, Suite 3400
Houston, Texas 77002-2992
T: 713.227.8008